And we'll turn to the last case on the calendar, and we'll hear counsel in U.S.A. v. Ronald Spoor. May I begin? Please. Good morning, Your Honors. May it please the Court, my name is Jonathan Edelstein. I represent the defendant, Appellant Ronald Spoor. As to the two images that Mr. Spoor produced, we submit that, although certainly distasteful, they are objectively considered not child pornography. Now, as a threshold matter, we would submit that the dosed factors to determine whether an image is or is not child pornography, including the sixth and last of the factors, should be determined objectively. How do you do that? Well, a number of other courts have done it, as we discussed in the brief, including the First and Third Circuits. And they state that the sixth factor is useful primarily to determine whether the other five factors are met, that we should look at the photograph, not the viewer or the photographer. That, and in the Rivera case, this Court cited that case law with approval, and observed that a measure of objectivity was needed to bring discipline to the jury's deliberations, to avoid them deciding cases based on emotions or visceral reactions, and certainly to avoid the jury taking shortcuts, such as saying, well, this defendant is a pedophile, he has a sexual orientation disorder, and so forth. He has a sexual interest in children, he took a picture of a nude child, therefore it's child pornography. There is a lot more to the analysis than that, and the objectivity in cases such as Villard or Amoreau or Steen, or as favored by this Court, although not explicitly decided in Rivera, would support that analysis. That what we should be looking at here is not Mr. Spoor, but the videos and the images that he took. And you invited us to do that. Correct, Your Honor. And we've done that. Now, as to the Camper video... We know it when we see it, to coin a phrase. No? I believe Judge Stewart might have gotten there first, but... He knew it, too. He knew it, too, but I would submit that there are certain standards by which you know it, and those standards, as numerous courts have found, are the standards in Dost. And I would point, with the Camper video, I would point in particular to the Steen case, which discusses viewing a video in its totality. And even the government concedes here that the portion of the video that it finds to be objectionable is less than a minute out of 20 minutes. It occurs about four minutes in. And I would point to the determination about whether a lascivious image was produced by your client by saying he also produced a lot of other material that wasn't lascivious. What's the logic behind that? Can you insulate creation of pornography by making a really long movie? Well, I would agree that you can't insulate child pornography simply by making a really long movie. However, I would submit that the content of the entire movie is relevant to what that portion of it, which is alleged to be child pornography, you know, whether that's lascivious, whether that is subject to the other Dost factors. And in connection with this case, what I would specifically point to is misdemeanors. Mr. Steen, Mr. Spoor did not command or ask or invite the boys to go under the blankets so that he could photograph their genitals. He followed them in and then he followed them out and continued to film them for another 16 minutes. He didn't ask them, well, stay in there. He didn't try to pose them while they were in there. He just followed them in and followed them out. You can see that the children's genitalia is visible once the cameras under the covers. Yes, I agree that the children's genitalia is visible. But of course, visibility is not the what the statute proscribes. It's lascivious exhibition just because genitalia are visible. And just because even if a child is totally nude, numerous courts have found that, that this is not in itself child pornography. And I would submit following kids under the blanket for a few seconds, again, distasteful. What are you thinking, Mr. Spoor? But it was not a lascivious exhibition of the genitals, even if, you know, due to the angle by which he has to follow them when he goes under the blankets, the genitalia become visible. And the overall setting is these kids are bouncing around in a living room on a sofa bed. The TV is on playing Disney movies. There's nothing sexual about this setting. And likewise, with regard to the bathroom video, we would again refer to the Steen case, which said that a video which is essentially voyeuristic, where it's, quote, unquote, peeking upon an unaware subject pursuing activities unrelated to sex, again, is distasteful. Again, what are you thinking, Mr. Spoor? But it's not what the statute construes as child pornography. Could you take a minute to address your argument about the substantive reasonableness of the 360-month term of incarceration that was imposed? The district court was entitled, was it not, to take into account the report in the PSR about his conviction for a criminal sexual act? Yes, I think that the district court was entitled to take that into account, and certainly it had the effect of increasing Mr. Spoor's criminal history and his guideline range, advisory range accordingly. But I would submit that even as to production, the Jenkins case, the Dorvey case, you know, those were possession cases, but I would submit even as to production, there is a distinction to be made between the worst of the worst and those who are merely bad. There are, I'm sure this court is aware, I'm aware, opposing counsel is aware, that there are truly horrific child pornography videos that are made that are sadistic in every sense of the term, involve exploitation of child after child, involve production for a commercial market, and although what Mr. Spoor did, assuming that this is child porn, certainly deserves punishment, it's not the worst of the worst. These were videos where the children did not, were by all accounts not aware they were being filmed. They weren't, I mean, I would rather not go into the graphic details of what I've read about in other child porn transcripts, but this isn't that. But the point is still, he was convicted by the state, and it says that the state conviction was on appeal. Is there a status update on that? I believe that it is still pending, but I don't, I can't confirm that. I haven't looked it up recently. But he was certainly punished by the state for those acts. He was separately punished by the state. And what exactly did that punishment consist of? Do we know? What sort of a record does Mr. Spoor have? Well, let me just, I'm not trying to catch you in any sense. So just think about it. Look, you've reserved some time. I've given you some extra time, so we'll give you a chance to address that when you come up on rebuttal. Okay. Thank you, Judge. May it please the Court, Your Honors. Tiffany Lee on behalf of the United States. The issue really boils down to was there sufficient evidence by which any rational juror could find and convict the defendant beyond a reasonable doubt? And to Judge Caproni's point about the visibility with respect to the camper video, the government submits. I was reminded as I was preparing for oral argument that Mr. Spoor was charged in counts one and two, not just with the substantive knowing production of child pornography, but with the attempt. And actually the district court, Judge Siragusa in his court, in his instructions, also instructed the jury with respect to attempt that it requires a substantial step. The government submits that the point where Mr. Spoor grabs the pinhole camera and takes it under the covers to film, to attempt to film the genital area, that certainly evinces a substantial step to try and get a lascivious exhibition of that boy's genitals. There's just no other way that the government, if the court were to draw every inference in favor of the government, that's the conclusion that a rational juror would come to. Did the jury return a general verdict, so it was both attempt and completion? Yes. So it was a general verdict as to attempt and completion. With respect to the bathroom videos, again, having I know this court has reviewed the videos, it's not set in a position where you're seeing the entirety of an individual. It's not from far away. It's set in a situation where it mainly captures the lower half of anyone kind of using the bathroom at that time. And so, therefore, again, there's sufficient evidence from which a rational juror can say, yes, I believe that as instructed and as properly instructed, and as properly instructed on the dose factors, that they could conclude, come to the conclusion that the defendant was guilty beyond a reasonable doubt. Turning to the issue with respect, yes. In the bathroom video, recognizing the camera angle was what it was, the conduct of the children, though, was not lascivious in any way. It was biological. Correct. The conduct was biological, but that doesn't change the intent of what the defendant was trying to get at, which was a focus . . . with the way DOST works is that the sixth factor can then wash out everything else. That's the videographer's intent, is to create a lascivious video and then never mind whether the actual conduct that he's filming is lascivious. I guess the issue with . . . it is a criticism of the dose factor that perhaps in a possession case, if someone's just looking at it from the frame point of does this elicit a response in the particular viewer, then is it truly a lascivious exhibition of the genitals? That said, this Court has already gone through the critique of the dose factors in Rivera. Basically, Rivera was an allegation of something similar where the defendant had posed the victim involved, and the question came about was use of the dose factors by the trial courts as a way of helping define what lascivious means, and the question with respect to the sixth dose factor. Rivera also recognized that in a production case, it does become something different because of the fact that production requires the defendant knowingly employing, using, engaging, enticing a minor to engage in sexually explicit conduct for the purpose of . . . But that's my point. The minors that were captured in the bathroom video engaged in no sexually explicit conduct. What does it mean to engage in sexually explicit conduct when we're talking about the lascivious exhibition of the genitals if, for example, the defendant is interested in just little boys' genitals, and the defendant doesn't have that titillation with respect to looking at little boys' genitals? But that's not this case. The government submits that . . . I'd like to follow up on Judge Caproni's question, because I wonder about the difference between voyeurism and the production of child pornography here, same because of the setting, and I guess part of your argument is that the camera was distanced, and that might suggest a desire to concentrate on the genital area. That's what the government submits, is that the way the particular video is framed, the mise en place, which is the language that this Court used in Rivera, suggests an intent to produce a lascivious exhibition of the genitals, meaning a focus on the arguably could be lascivious for a particular defendant. But even turning back to . . . Do you think that's so even . . . I mean, our interpretation of the circumstances is enhanced, I think, by the knowledge of Mr. Sporre's sexual interest in young boys in the prior conviction, the Rule 414 evidence. And I've wondered about whether that is also correct to take into account, or whether we should have a more objective view, as the dose factors seem to suggest. I don't think the dose factors themselves suggest an objective view. The dose factors, the way they're instructed, is just to provide, again, as this Court indicated in Rivera, a way to buttress against emotional response or emotional consideration for if someone sees any nudity. In this particular case, Defense Counsel asked specifically for an instruction, which they got, which was, please don't count nudity as just being sufficient under the dose factors in order to consider this as child pornography, which was instructed. As to the point on Rule 414, that's a rule of evidence that specifically states that you can bring in prior conduct of sexual abuse of minors to show propensity. It's the one area where propensity is allowed. And this Court has said, you know, the question is for a district court to just determine its relevance in a particular case, and then second, to weigh whether it's unfairly prejudicial. It is going to be the fact that his prior conviction was admitted is not prejudicial. But the question is, was it unfairly prejudicial? And all this particular Court allowed was just the fact of the conviction, no underlying information regarding the conduct. There was nothing given with respect to the identity of the minor. Kagan. And you would say that that was relevant to the production count and the possession count? I would say it's definitely relevant for the production count, again, because of the I thought it was relevant to the possession count because he claimed that the images had been placed on his computer by someone else, but I wasn't sure about the production count. We would, we had actually argued that it would be important for all the counts, but for the production count, more for the purpose of these videos, because he was Mr. Sporr's position from the beginning of this case that they're not child pornography. As to the other videos that he received on peer-to-peer, he may have tried to assert that they're not his, but. It's only relevant to whether they're child pornography if factor six is subjective, so that in essence, if you are a child molester and you make a video, you're guilty of child pornography production. Because otherwise, the fact that he was a child predator is not relevant to the question of what he ultimately produced was or wasn't child pornography. It does have, I think, some bearing on the fact that I understand your position, but the reality is that is a particular rule of evidence that allows propensity to come in. And it's clearly relevant to his possession count anyway. Correct. It was going to come in. But for the production counts, it's the government's position that it is relevant for why are you taking, trying to take the camera underneath the covers to focus in on the genitals of this child. So we feel that they're married. There's a relevance in order to explain that context of what happened in that video. It is an open question. If that did not take place in the Camper video, it is an open question whether or not the remaining aspects of that video would constitute child pornography. But that's not what we're here for. Clearly in this video, there was a moment when he took the camera and took it, filmed underneath, and then even afterwards, if you listen to the video, you can hear the child saying, what are you doing? What's going on? And he was hiding whatever. He wasn't giving a straight answer. And Mr. Spohr then returned the pinhole camera. This is not a case where people are being posed or that they know that a camera is existing. So to Mr. Edelstein's point in his reply brief, this is not an accidental capturing of someone's genital areas. It was purposeful. On that question, perhaps, can you refresh our recollection as to how this case began? Yes. This case began because of the fact that on his videos, there was a cousin who was visiting or either living with the Spohr family during that period of time in December of 2012. And one of the cousins was working on the computer that was primarily used by Mr. Spohr. And then he ended up seeing these images of child pornography that had been downloaded outside. So not the videos that were found on the pinhole camera. He and Mr. Spohr's now ex-wife, they went to the state troopers and they discussed their findings. The cousin actually brought, I believe, the hard drive, which then developed into a search warrant at that point in time. They recovered all these items, including this pinhole camera. And I need to describe the pinhole camera because I didn't know what they were talking about. It's actually a device that's probably three quarters. If you think about a quarter, 25 cents. If you put three of them together, it would line up. In length, it's like that long. And then in width, it's about the size of a quarter. I actually have a picture with me to remind me what it looks like. But it's also capable of putting a memory card, so a small memory card in. So you can hide it in your hand. It's just a black looking item. And then you just turn it on and it'll just record onto the memory card. But that's how this case began. It was really a cousin jumping on the computer, finding images of child pornography and then going. Not an earlier investigation or anything of that sort? No. All that information actually about the previous other victims came forth when he went to New York State troopers. And then he was he admitted that he actually had sexual conduct with, I believe, a seven year old boy previously. And then prior to his sentence, the probation department uncovered all the other information. And to Judge Carney's point, we believe that a sentence of 30 years is reasonable, substantively reasonable. This is a child predator who had been going on for quite a few years undetected and who had ruined the lives of many young boys. I take it you don't know the status of the appeal of the state conviction? I apologize. I really should have taken a look into it at the time before coming here today. At this point in time, I don't. But I am prepared to prepare a 28-J letter because I can go back and actually find out from either the district attorney's office or council. That would be helpful. Why don't we assume that you'll send that to us by Monday? We'll do. Of next week. And I'll find out about the status of the sentence. Of course, copy copies to your friend on the other side and you'll do it electronically. Thank you very much. Thank you very much. First of all, to answer Your Honor's question, the plea in the state court was to criminal sexual abuse in the first degree, resulting in a five year sentence. This is a determinate sentence. It's an 85 percent sentence, just like a federal sentence. There's no parole on that in the state system. And it is consecutive to the federal sentence. The district court pronounced that specifically, that the federal sentence was to be served consecutively to the state. And chronologically the state sentence came after? Chronologically the state sentence came after. So Mr. Spoor is serving his federal sentence now. In any event, now to address my opposing counsel's arguments. First of all, on the issue of attempt, if these images were not completed child pornography, I don't see any evidence in the record from which a jury could find that they're an attempt either. Because there's no evidence from which it could be inferred that Mr. Spoor was trying to do more than what he did. He made these images. He completed them. He succeeded. Right. But I think the attempt would be on the notion that the video quality was extremely poor once he went under the covers. Had it been clearer or there was more light, it might have been quite clear that it was a lascivious exhibition of the child's genitals. Again, I would submit that regardless of the lighting, and I would state first of all, this theory was never argued to the jury. This theory was never argued to the jury. Nobody ever said to the jury, the lighting is poor, but imagine what he could have done if the lighting was better. This was never put to the jury. This was never argued to the jury as anything other than a completed offense. And again, if the nature of this exhibition of the genitals, if these genitals were not visible in a lascivious manner, which we submit they were not, then the lighting conditions would not result in an attempt. Either this was a Now, as to the distinction between possession and production, I would point out Dost itself is a production case. Rivera was a production case. Several of the other cases cited in our papers were. And in fact, some of the cases we cited in point three, you know, the Rule 414 point,  So, and in that case, and in others, there were, it was found that the defendant was properly precluded from presenting evidence that he was not a pedophile. If evidence that he's not a pedophile is irrelevant, then so is evidence that he was. And on the Rule 414 issue, although it does, you know, evidence of other sexual crimes is allowed on the issue of propensity, it relaxes Rule 404B to that extent. It still requires, and the case law requires, the basic threshold of relevance. And finally, as counsel conceded, this is not a case where people were being posed, where they were being arranged in some manner. As to the camper video, them going under the blankets was something that they did. They weren't asked to do it by the defendant. He didn't say, go under there so that I can film your genitals. So I would submit that objectively speaking, these convictions should be reversed. Thanks very much, Mr. Edelstein. Thank you, Your Honor. We'll reserve the decision and we are adjourned.